Nathaniel **GREEN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 62002.

Court of Criminal Appeals of Texas, Panel No. 3.

Feb. 25, 1987.

J. Stephen Cooper, Dallas, for appellant.

Henry Wade, Dist. Atty. and Bruce Evan Foster, Mike Keasler, Bob Whaley & Mike Gillett, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before W.C. DAVIS and TEAGUE, JJ.

### OPINION

TEAGUE, Judge.

Nathaniel Green, appellant, in a separate trial from his three co-defendants, who are not identified in the record of appeal, was convicted by a jury of committing the aggravated robbery of U.G. Venerable. The trial court assessed punishment at 25 years' confinement in the penitentiary. We will reverse the judgment of conviction because we find that the verdict of the jury may have been based upon illegally obtained evidence.

Appellant's counsel on appeal asserts that the trial court erred by admitting into evidence a set of keys and a blue bandana, both of which he asserts were seized incidental to his unlawful arrest by Dallas police officers. The State counters that because it established that appellant was "about to escape" when he was arrested, appellant's warrantless arrest by the police was legal, thus rendering the set of keys and bandana obtained incidental to the arrest admissible evidence. Because of the diverse positions the respective parties

have taken, we believe that it is necessary to state for the reader some of the facts adduced at the motion to suppress hearing, which relate to the main charge and appellant's arrest by the police.

The identification testimony of Venerable, the complaining witness, establishes that appellant was one of four persons who robbed him at gunpoint at approximately 2:00 a.m. on August 7, 1978, when he was working as the manager of a motel located in Dallas. The robbers took, among other things, a set of keys from Venerable which had belonged to the motel.

Appellant was arrested at approximately 5:00 a.m. on August 13, 1978, in a motel room of a motel other than the one Venerable managed. The record does not expressly reflect that appellant's arrest was related to the robbery of Venerable. In fact, there is not anything of an express nature in the record to reflect exactly when the police determined to charge appellant with committing the robbery of Venerable.

The record events leading to appellant's warrantless arrest reflect that on August 13, 1978, another robbery occurred at a grocery store located in Dallas. Two persons were wounded as a result of a shoot-out that occurred at the grocery store. Steve Brasher, a Dallas police officer, was assigned to investigate the robbery and the shooting. Brasher went to Parkland Hospital to interview one of the persons who had been shot. During the interview, the victim pointed to a female, who was apparently nearby, and identified her as one of the robbers. The State informs us in its appellate brief that the female was at the hospital to visit her husband who had been wounded in the shoot-out at the grocery store. Brasher arrested the female, and thereafter had a discussion with her.

The female admitted to Brasher that she had been one of the participants in the robbery which had occurred at the grocery store. She told Brasher that another participant of the robbery, who was known to her only as "Joe," was staying at a certain motel, which was other than the one Venerable managed. It was later determined that "Joe" was Joe Alexander.

Based on the information obtained from the female, police officers thereafter went to the motel room in which Alexander was staying, and subsequently arrested Alexander. After he was arrested, Alexander directed the police to a room which appellant had rented.

We pause to point out that the record does not expressly reflect that either the female or Alexander ever implicated appellant as being one of the participants in the robbery that had occurred at the grocery store, nor does the record expressly reflect that either Alexander or the female were shown to have participated with appellant in the robbery of Venerable.

After obtaining a key from the manager of the motel to the room registered to appellant, police officers went to the room, forcibly and without appellant's consent or a warrant of any kind opened the door, and entered the room where they found appellant, a female and her young child. The police arrested appellant and the female. Police officers seized from inside the room a set of keys, which were subsequently shown to be the set of keys taken from Venerable, and a blue bandana.

In resolving appellant's assertion that his arrest was unlawful, and the State's counter-argument that the arrest was lawful, we first point out that warrantless arrests in this State may occur only in the most limited of circumstances. The power to make a warrantless arrest is governed by statutes as well as case law on the subject. See *Lowery v. State*, 499 S.W.2d 160 (Tex. Cr.App.1973); Arts. 14.01–14.04, V.A.C. C.P., inclusive, and Art. 18.16, V.A.C.C.P.

■ Before items of property seized incidental to a warrantless arrest may become admissible evidence, the prosecution must first establish that the warrantless arrest was permissible under an exception provided by law to the general rule that a police officer must, when the circumstances permit, obtain an arrest warrant before arresting an individual. *Butler v. State*, 151 Tex.Cr.R. 244, 208 S.W.2d 89 (1947).

In *Steagald v. United States*, 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d

38, 45 (1981), the Supreme Court of the United States pointedly stated the following: "Except in such special situations [consent or exigent circumstances], we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." Also see *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Duncan v. State*, 639 S.W.2d 314 (Tex.Cr.App.1982).

Art. 14.04, V.A.C.C.P., provides: "Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

■ The State claims that appellant's warrantless arrest was authorized because appellant was "about to escape" when he was arrested. We disagree.

This Court has held that "Art. 14.04, [supra], does not require a showing that the offender in fact was about to escape, nor does it require a showing that there in fact was no time to procure a warrant.... [The statute] merely requires a showing that the [arresting] officer was acting upon satisfactory proof from representations by a credible person that the felony offender 'is about to escape, so that there is no time to procure a warrant,'" *Fry v. State*, 639 S.W.2d 463 (Tex.Cr.App.1982). However, it has never held that Art. 14.04, supra, may be used to sustain a warrantless arrest, unless there was some evidence which showed or tended to show that the person sought to be arrested was "about to escape." And we do not commence a new trend today.

After carefully reviewing the facts which relate to the warrantless arrest of appellant, see supra, and the law on the subject of warrantless arrests, see post, we must disagree with the State that it has presented sufficient facts to establish that appellant "was about to escape" at the time of his warrantless arrest. Instead, we find that the facts before us are insufficient to

authorize this Court to invoke and apply the provisions of Art. 14.04, supra, to uphold appellant's warrantless arrest.

The record does not expressly establish or indicate that appellant was implicated in the robbery which had occurred at the grocery·store, nor does the record establish or indicate that Alexander or the female had participated in the robbery of Venerable. Neither the female nor Alexander ever informed any police officer that appellant was "about to escape." Also, there is nothing of an express nature in the record which would reflect or indicate that at the time the police went to appellant's motel room he was preparing to "move out" or "move on." The facts instead reflect or indicate that at the time of his arrest appellant had resided in the motel room for approximately two weeks. There is no evidence in the record which would reflect or indicate that he did not plan to stay there indefinitely. When the police officers arrested appellant, the television set in the motel room was on, and most of the observed clothing was hung up in a closet or was in a pile on the floor. Inside the room was an adult female who had her young child with her.

In its claim that the arrest of appellant was lawful, the State argues that it established appellant was about to escape because it showed that when the police officers went to the motel room, appellant "came towards the door, looked out the curtains, the windows next, and ran back towards the bedroom area." The record, however, also reflects that when the police officers commenced pounding on the door, appellant returned to the front room and unlocked the door, thus allowing the officers to gain entry. We further point out that there was no rear exit, either by door or window, to the motel room. Thus, the rear of the motel room neither offered nor provided appellant with an escape route.

We are compelled under the above facts to hold that appellant was not "about to escape" when he was arrested. The warrantless arrest of appellant was unlawful. Because of the unlawfulness of the arrest, the blue bandana and set of keys, which

were seized incident to the arrest, became inadmissible evidence. For decisional authority which supports our holding, see *Pearson v. State*, 657 S.W.2d 120 (Tex.Cr. App.1983); *Earley v. State*, 635 S.W.2d 528 (Tex.Cr.App.1982); *Hardison v. State*, 597 S.W.2d 355 (Tex.Cr.App.1980); *Honeycutt v. State*, 499 S.W.2d 662 (Tex.Cr.App.1973). Cf. *King v. State*, 631 S.W.2d 486 (Tex.Cr. App.1982); *Holt v. State*, 538 S.W.2d 125 (Tex.Cr.App.1976); *Maloy v. State*, 582 S.W.2d 125 (Tex.Cr.App.1979); *Tarpley v. State*, 565 S.W.2d 525, 530 (Tex.Cr.App. 1978); *Woods v. State*, 466 S.W.2d 741 (Tex.Cr.App.1971); *Randall v. State*, 656 S.W.2d 487 (Tex.Cr.App.1983). Cf. *West v. State*, 720 S.W.2d 511 (Tex.Cr.App.1986).

As previously noted, it is axiomatic under Texas law that when possible a police officer should always obtain an arrest warrant before arresting an individual. See *Hogan v. State*, 631 S.W.2d 159 (Tex.Cr.App.1982), where Judge McCormick of this Court pointed out that even though the police may have probable cause to make a warrantless arrest, nevertheless, before a warrantless arrest may occur pursuant to Art. 14.04, supra, the prosecution also must establish that it was not possible under the circumstances to secure a felony arrest warrant. (Compare *Hogan v. State*, Id., and *Hardison v. State*, supra, with *Tarpley v. State*, supra, and *Holt v. State*, supra.) In this instance, the prosecution presented *no evidence whatsoever* to establish that prior to the time the police officers arrested appellant it was not possible under the circumstances for them to have obtained an arrest warrant.

The trial court erred in admitting the keys and the bandana into evidence.

■ The State alternatively argues that the admission of the keys and bandana was harmless error. We disagree. The test that this Court uses to make the determination whether the error is harmless is not whether the conviction could have been had without the improperly admitted evidence, but, instead, is whether there is a reasonable possibility that the complained of evidence might have contributed to the conviction or the punishment assessed. See *Clemons v. State*, 605 S.W.2d 567, 571 (Tex.Cr.App.1980); *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980).

■ In this instance, the only evidence adduced at trial besides the keys and the bandana to connect appellant to the robbery of Venerable was the identification testimony by the 75 year old Venerable that appellant was one of the four robbers, each of whom was wearing a bandana similar to the one recovered covering the bottom half of their faces. Venerable also testified that he was not able to watch all four of the robbers the entire 3 or 4 minutes they were in the office. The evidence established shows that the office was lighted by one 150-watt bulb. Although Venerable's identification alone would have been sufficient to sustain the conviction, it is not sufficient to render harmless beyond a reasonable doubt the improper admission into evidence of the illegally seized evidence. We find that appellant's possession of the keys, together with the bandana, surely erased any doubt that the jurors might have had of the reliability of Venerable's identification of appellant as being one of the robbers, given the factors of the age of Venerable, the time of the robbery, and the wearing of the bandanas by the robbers. We cannot say that there is not a reasonable possibility that the admission into evidence of the illegally seized evidence was harmless beyond a reasonable doubt.

The judgment of conviction of the trial court is reversed and the cause remanded to the trial court.