**Frank Joseph TURNER, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 06–86–00846–CR.**

Court of Appeals of Texas, Dallas.

July 15, 1987.

Rehearing Denied Aug. 19, 1987.

R. Keith Walker, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before DEVANY, BAKER and McCRAW, JJ.

BAKER, Justice.

Frank Joseph Turner was convicted of driving while intoxicated and punishment was assessed at 180 days confinement in Dallas County Jail, probated, and a fine of $1,000. Turner appeals on three points of error as follows: (1) the trial court erred in admitting into evidence the results of the blood test given the appellant; (2) the trial court erred by admitting into evidence testimony as to the chemical alcohol blood volume content of appellant, and the content for legal intoxication, and (3) the trial court erred by responding to the jury's request for further instructions by reconvening the jury to rehear the testimony of the witness complained of in point of error two. We agree, and for the reasons stated below, reverse and remand for a new trial.

Because appellant's three points of error are interrelated, they will be discussed together. Appellant's complaint in his first point of error is that the trial court erred in admitting into evidence the results of the blood test given the appellant. Tex.Civ.St. Article 6701*l*–5, § 3(c) provides that:

When a person gives a specimen of blood at the request or order of a peace officer under the provisions of this Act, only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse under the supervision or direction of a licensed physician may withdraw a blood specimen for the purposes of determining the alcohol concentration or presence of a controlled substance or drug therein. The sample must be taken by a physician or in a physician's office or a hospital licensed by the Texas Department of Health.

■ Appellant contends that the nurse who withdrew the blood sample from appellant was not under the supervision of a physician or acting at his direction since the physician *was not present* during the nurse's shift. We do not read the statute to require a physician's presence during the time that the blood sample is drawn. Rather, the statute requires direction or supervision. Appellant does not contend that the nurse had not received proper training to withdraw blood, nor is he heard to complain that she had not been provided with standard procedures to follow in taking the sample. In fact, nurse Abendschein testified that she had followed standard procedures in taking appellant's blood sample. *See Bennett v. State*, 723 S.W.2d 359 (Tex. App.—Ft. Worth 1987, no pet.)

■ Appellant next contends in this point of error that the State did not establish that the sample was taken by a physician or in a physician's office or in a hospital licensed by the Texas Department of Health. Nurse Abendschein testified that she worked for the County Health Department as an L.V.N. She further testified that her supervisors were Barbara Stacy, R.N., who is Director of Nurses, and Dr. Aldridge. Dr. Aldridge was not working on the 3–11 p.m. shift the evening that appellant was taken in to have his blood drawn, but he was on call. No evidence was introduced at trial regarding the status of Lew Sterrett Center as a licensed hospital. The only testimony in the record was that of nurse Abendschein and James D. Moses, the arresting officer. Nurse Abendschein called the room where the blood was drawn a "first aid room." Officer Moses said it was "at Lew Sterrett

Justice Center, the second floor. A room provided for the blood test." At no time was evidence presented that this room was a physician's office. We conclude that the predicate required by Art. 6701*l*-5, § 3(c) was not met by the State, and that the admission of the blood test was erroneous.

This leads us to consideration of appellant's second point of error, wherein appellant asserts the trial court erred in admitting into evidence the testimony of E.H. Foerster, the State's toxicology witness regarding the chemical alcohol blood content of appellant and the standard of alcohol blood volume content for legal intoxication. Appellant asserts that this testimony was evidence of legal intoxication not pleaded in the information, and was, therefore, extremely prejudicial to him.

■ Appellant complains primarily of Foerster's testimony that a case is fileable, and is filed, if the blood test shows at least a .10 alcohol content; and his further testimony that a result above .10 is legal intoxication in Texas. Because we have found the report of the blood test and its results inadmissible, it follows, and we hold that testimony regarding those results was likewise inadmissible. *See Bass v. State*, 732 S.W.2d 632 (Tex.Crim.App.1987).

Having reached these conclusions on points one and two does not end our inquiry. We must now determine whether these trial errors were harmless.

■ TEX.R.APP.P. 81(b)(2) (Vernon Supp.1986) provides:

If the appellate record in a criminal case reveals error in the proceedings below, the .appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

A judgment will not be reversed for the erroneous admission of evidence that did not injure the defendant. *Bass v. State*, 622 S.W.2d 101 (Tex.Crim.App.1981). The test for harmless error is not whether a conviction could have been had without the improperly admitted evidence, but whether there is a reasonable possibility that the evidence might have contributed to the conviction or the punishment assessed. *Green v. State*, 727 S.W.2d 263 (Tex.Crim.App. 1987); *Maynard v. State*, 685 S.W.2d 60 (Tex.Crim.App.1985). We are persuaded that the improperly admitted evidence did indeed contribute to appellant's conviction.

In his third point of error appellant contends that the trial court erred by reconvening the jury and permitting the jury to have read to them the testimony of the toxicologist Foerster that was complained of in point two. In this connection, appellant further contends that this procedure by the trial court constituted a comment on the weight of the evidence.

In determining whether there was harmful error in admitting improper evidence, the facts and circumstances of the individual case must be considered. *Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim.App.1985) *cert. denied*, —— U.S. ——, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). A review of the facts and circumstances in the instant case reveal that the jury was initially unable to come to an unanimous verdict. There was a 3–to–3 split both times a vote was taken, and the foreman indicated that everyone was firm in their opinion. The jury sent out a note to the trial judge which read: "Judge—Is .10 a guideline or a law to prove intoxication." The court responded by instructing the jury that the testimony could not be read to them until the jury disagreed as to the statement of a witness, and that they must certify that they were in disagreement and that they should request that part of the witness' testimony on the point in dispute. The jury sent out another note stating: "We would like to hear Mr. Lamont's testimony on whether he stated that .10 is the law of intoxication or just a guideline to go by." The Court then corrected the name of the witness the jury wanted to hear and allowed the jury to hear the reading of Mr. Foerster's testimony. The jury returned a verdict of guilty within ten minutes after the witness' prior testimony was read to them. We conclude that in light of the fact that the jury obviously focused on the testimony regarding the results of the blood test, the improperly

admitted evidence contributed to the conviction. *See Moone v. State*, 728 S.W.2d 928, 931 (Tex.App.—Houston [14th Dist.] 1987, no pet.). The factual circumstances in this case with respect to the jury's reaction to the testimony on the results of the blood test are unique; and, therefore, this holding is limited to the facts in this case. Points of error one, two, and three are sustained. The appellant's conviction is reversed and the cause remanded for a new trial.

McCRAW, Justice concurring.

I concur. I also would hold the improper admission of evidence harmful, but I differ in the analysis. As stated in the majority opinion, the test for harm is whether there is a reasonable possibility that the evidence might have contributed to the conviction or the punishment assessed. *Green v. State*, 727 S.W.2d 263, 267 (Tex.Crim.App.1987). Further, the admission of improper evidence puts the burden on the State to prove beyond a reasonable doubt that this error did not contribute to the conviction. *Foster v. State*, 687 S.W.2d 65, 66 (Tex.App.—Dallas 1985, pet. ref'd). To determine whether the evidence contributed to the conviction, I ask whether the "minds of an average jury" would have found the State's case less persuasive had the testimony been excluded. *Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim.App.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986) (citing *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)). *See also Beck v. State*, 712 S.W.2d 745, 748–49 (Tex.Crim.App.1986); *Ranson v. State*, 707 S.W.2d 96, 100 (Tex.Crim.App. 1986); *Vanderbilt v. State*, 629 S.W.2d 709, 724 (Tex.Crim.App.1981).

The test to determine whether erroneously admitted evidence contributed to the conviction is an objective one, based upon the perception of the case by the *average* jury. By relying upon the pattern of deliberation of *this* jury and upon the notes sent by *this* jury, the majority creates a subjective standard not supported by the case law. The appellate court becomes a fact-finder when it attempts to discern the subjective intent of the jury. Such action exceeds the scope of appellate review.

The facts and circumstances of the individual case must be considered in determining whether harm resulted from the admission of improper evidence. *Bird*, 692 S.W.2d at 70. In this case, appellant was charged by information for the offense of driving while intoxicated, "in that [appellant] did not have the normal use of his mental and physical faculties by reason of the introduction of alcohol, and a controlled substance a drug, or a combination of the two into [appellant's] body." The court's charge to the jury tracked the language of the information.

The arresting officer testified that he stopped appellant for speeding. Appellant was unsteady, "wobbling around," and could not touch his nose with his index finger when the officer administered a field sobriety test. Appellant's eyes were red and seemed bloodshot. The officer noticed a moderate odor of alcohol emanating from appellant. His speech was choppy, and according to the police officer, was "not normal speech." The officer, based upon these facts, expressed his opinion that appellant did not have the normal use of his mental and physical faculties due to the introduction of alcohol and possibly drugs into his body.

The back-up officer who joined the arresting officer at the scene of the arrest confirmed this testimony concerning appellant's behavior, and further testified to finding three cans of beer upon searching appellant's motorcycle. The book-in officer at Lew Sterrett Justice Center testified that she found a bag of marijuana in appellant's right sleeve when she searched him. She also testified that she smelled alcohol on his breath, that appellant's speech was slurred, that his eyes were bloodshot and that he was acting goofy.

A fourth police officer, a technical supervisor in the Alcohol Testing Program, testified that when blood test results were .11, a person would have lost his mental and physical faculties to the point where he could not drive safely. At blood-alcohol levels of .11 a person would not be "stum-

bling down drunk," but alcohol would have affected motor vehicle operation.

As the majority opinion states, E.H. Foerster testified, over appellant's objection, that blood tests revealed appellant's blood alcohol content to be .113. Foerster expressed his opinion that a person with that level of alcohol in the blood would have lost the normal use of his mental and physical faculties. Foerster further testified that he did not test for drugs like cocaine after the test reveals a blood alcohol content of at least .10 because a case is fileable at that point: "When someone is above a .10 that is legal intoxication in the State of Texas."

A police officer testified, as a witness for the defense, that he had known appellant for four to five years and had seen him intoxicated. He saw appellant the night he was arrested and did not notice abnormal speech patterns, faulty balance or belligerent behavior. Based upon his observations and his experience as a police officer, he could not tell whether appellant was intoxicated or not. He did state, however, "I noticed no indication of his intoxication at the time I saw him that night."

Appellant testified that he had a couple of beers during a three-hour afternoon football game, that he ate dinner around 6:00 or 6:30, and that he had one beer shortly after dinner. He was arrested at approximately 8:45 p.m. Appellant testified that he had not had enough alcohol that day to become intoxicated. Appellant's wife and the relative with whom he was watching the football game also testified that appellant had only three or four beers.

During jury argument the prosecutor stated that there were three definitions of intoxication: (1) loss of normal use of mental faculties; (2) loss of normal use of physical faculties; and (3) a blood alcohol concentration of .10 or greater, "a point at which under State law all persons are deemed intoxicated." The prosecutor then stated that intoxication could be proved by opinion evidence or scientific evidence. When reviewing the scientific evidence, she stated, "under the law in Texas, .11 is intoxicated."

After reviewing all the facts and circumstances of this case, *Bird*, 692 S.W.2d at 70, I agree with the majority's conclusion that there is a reasonable possibility that the improperly admitted blood test and the testimony concerning the results might have contributed to appellant's conviction. The testimony regarding the physical manifestations of intoxication was conflicting. The jury was told by a witness and by the prosecutor that .10 was the "legal intoxication" level in Texas. The State also introduced into evidence, over appellant's objection, blood test results showing appellant's blood alcohol level to be .113. I would hold that the State has failed to meet its harsh burden of showing beyond a reasonable doubt that the improperly admitted evidence did not contribute to appellant's conviction. *Foster*, 687 S.W.2d at 66. I concur, therefore, in the reversal of appellant's conviction and in remanding for new trial.