Jimmy Rocky LITTLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–96–01500–CR

Court of Appeals of Texas,
Dallas.

June 19, 1998.

John Hendrik, Dallas, for appellant.

Michael J. Sandlin, Asst. Dist. Atty., Dallas, for state.

Before THOMAS, C.J., and FARRIS[1] and MILLER,[2] JJ.

---

1. The Honorable David F. Farris, Former Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Chuck Miller, Judge, Texas Court of Criminal Appeals, Retired, sitting by assignment.

## OPINION

THOMAS, Chief Justice.

Jimmy Rocky Little appeals his conviction for driving while intoxicated (DWI). In two points of error, appellant complains that (1) the trial court erred in denying his motion for new trial due to a *Brady* violation by the State, and (2) trial counsel rendered ineffective assistance of counsel. Because we conclude the prosecution violated *Brady*, we reverse the trial court's judgment and remand the cause for a new trial.

Appellant was arrested for DWI and consented to the taking of a blood sample for purposes of blood-alcohol testing. At trial, but prior to testifying, the State's chemist, E.H. Foerster, informed the State's prosecutors that he did not have his file including the graphical results, or printout, of appellant's blood-alcohol test, but had "things on the computer which gave the results of the blood [sic]." On direct-examination, Forester testified he received and analyzed appellant's blood sample and the result indicated a .13 alcohol concentration, which is over the .10 legal limit in Texas.[3] After Forester's direct-examination, the prosecutor told defense counsel about the missing results. On cross-examination of Foerster, defense counsel elicited testimony that there is a printout that graphically records the analysis of the blood, and that this printout could be used by someone trained in the field to determine whether the test results in the case were accurate. Foerster testified the printout, and the label applied to the vial of blood identifying the sample as appellant's, had been lost, misplaced, or misfiled. Foerster admitted that he had no personal recollection of testing appellant's blood sample due to the volume of testing he performs. The defense's expert witness testified that without the printout of the blood test results there was no way to say for certain that the .13 result was accurate. The jury convicted appellant and the trial court assessed punish-

ment. Appellant filed a motion for new trial alleging a *Brady* violation.

At the hearing on motion for new trial, one of the State's prosecutors testified she was aware "that some paperwork was missing" before Foerster testified, but because the case was her first blood test case, she was not aware of the nature and significance of the graphical results. She further testified that, after direct-examination of Foerster, her supervisor suggested the information be turned over to appellant's trial counsel. Another prosecuting attorney for the State, testified Foerster "came in and said 'I don't have my files,'" but Foerster told him that he was confident in the results of the blood test. The prosecutor testified Foerster was called to testify while he was trying to figure out if the blood test results would be admissible under the circumstances. He testified it was first brought to his attention after Foerster was already on the stand that the missing results could implicate a *Brady* issue. The prosecutor testified he and his fellow prosecutor informed defense counsel of the missing results at the conclusion of Foerster's direct-examination. The trial court denied the motion for new trial. This appeal followed.

■ In his first point of error, appellant asserts the trial court erred in denying the motion for new trial because of the suppression of exculpatory evidence by the State. Appellant's analysis treats the State's failure to disclose the loss of the blood test results as a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ Under *Brady,* a prosecutor has an affirmative duty to turn over to the accused all material, exculpatory evidence, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. 1194. This duty attaches as soon as the information comes into the prosecutor's possession, with or without a request from the defense for such evidence, and must be disclosed to the accused in time to put it to effective use at trial. *See Palmer v. State,*

---

3. *See* TEX. PENAL CODE ANN. § 49.01(2) (Vernon 1994).

902 S.W.2d 561, 563 (Tex.App.—Houston [1st Dist.] 1995, no pet.); *Givens v. State,* 749 S.W.2d 954, 957 (Tex.App.—Fort Worth 1988, pet. ref'd). An accused is entitled to a new trial due to a *Brady* violation if he shows (1) the prosecutor actively or negligently failed to disclose evidence, (2) the evidence is favorable to the accused, and (3) the evidence is material—that is, the evidence creates a probability sufficient to undermine confidence in the outcome of the proceeding. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Ex parte Kimes,* 872 S.W.2d 700, 702 (Tex.Crim. App.1993). Impeachment evidence is considered to be favorable to the accused and is therefore subject to the mandatory disclosure dictates of *Brady. See Etheridge v. State,* 903 S.W.2d 1, 20 (Tex.Crim.App.), *cert. denied,* 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). Moreover, a *Brady* violation occurs when a prosecutor fails to disclose evidence that may impeach the credibility of a State's witness where the witness's credibility is material to disposition of an accused's guilt. *See Johnston v. State,* 917 S.W.2d 135, 138 (Tex.App.—Fort Worth 1996, pet. ref'd).

█ In this case, it is undisputed that the prosecution failed to disclose the lost evidence to the defense as soon as it received the information. It is also undisputed that the graphical results are necessary to analyze the reliability or accuracy of the results of the blood test. Thus, the absence of the printout thwarted any ability of the defense's expert witness to question the reliability or accuracy of Foerster's testimony. Moreover, in the absence of the graphical results, the trial court may have determined Foerster did not have a sufficient basis for his purported expert testimony regarding the results. *See Aguilar v. State,* 887 S.W.2d 27, 29 (Tex. Crim.App.1994); Tex.R.Crim. Evid. 705(b), (c). Thus, had the State disclosed the loss of the evidence as soon as it became aware of the fact, defense counsel would have had the option of employing a different trial strategy—one that may have resulted in exclusion of the testimony altogether. At the very least, defense counsel would have had the opportunity to voir dire Foerster outside the presence of the jury before the State's direct-examination. *See, e.g.,* Tex.R.Crim. Evid. 705(b). Assuming, without deciding, Forester's testimony was inadmissible, in our view, no curative instructions could have removed the prejudice from the minds of the jurors Foerster's testimony that appellant had a .13 alcohol concentration. The testimony was the only quantitative evidence of appellant's intoxication. As such, and after reviewing the entire record on appeal, we believe there is more than a reasonable probability the testimony of appellant's .13 blood-alcohol level contributed to appellant's conviction. *See, e.g., Turner v. State,* 734 S.W.2d 186, 188–89 (Tex.App.—Dallas 1987, pet. ref'd). If there is some doubt on the State's part as to whether lost evidence is favorable to the defense, the prosecution must err on the side of disclosure. *See Bagley,* 473 U.S. at 699, 105 S.Ct. 3375. Thus, we conclude the State's failure to inform the defense of the lost evidence is a failure to disclose material information which undermines confidence in the outcome of the trial. Due to the State's nondisclosure, and in the interest of justice, we further conclude the trial court abused its discretion in denying appellant's motion for new trial. *See State v. Gonzalez,* 855 S.W.2d 692, 693 (Tex. Crim.App.1993). We sustain appellant's point of error one.

Because resolution of point of error one is dispositive of this appeal, we need not address appellant's second point of error. *See* Tex.R.App. P. 47.1.

Accordingly, we reverse the trial court's judgment and remand this cause for a new trial.