02-11-474-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00474-CR

 

 









 
 
 Stephen
 Paul Walters
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From County Criminal
 Court No. 9
  
 of
 Tarrant County (1214539)
  
 March
 21, 2013
  
 Opinion
 by Justice Meier
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s order.  It is ordered that the order of the trial
court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS

 

 

 

By_________________________________

   
Justice Bill Meier

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00474-CR

 

 


 
 
 Stephen Paul Walters
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM County
Criminal Court No. 9 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

The
State charged Appellant Stephen Paul Walters by information with the
misdemeanor offense of driving while intoxicated.[2] 
Prior to entering a plea of guilty, Walters moved to suppress the results of a
blood draw taken at the Mansfield city jail by a licensed vocational nurse
(LVN) on the night he was arrested.  The trial court denied Walters’s motion to
suppress, accepted his plea of guilty, and assessed punishment at 120 days’
confinement in jail and a fine of $850.  The trial court suspended Walter’s
sentence and placed him on community supervision for eighteen months.  In one
point, Walters argues that the trial court erred by denying his motion to
suppress.  We will affirm.

II.  Background

City
of Mansfield Police Officer Justin Graves responded to a dispatch on July 30,
2010, regarding a vehicle failing to maintain a single lane.  Graves stopped
Walters, and after determining he was intoxicated, placed him under arrest and
took him to the City of Mansfield jail for booking.  Graves asked Walters if he
would consent to a blood draw.  Walters refused.  Graves then completed a
search warrant affidavit to conduct a blood draw, and a magistrate signed the
warrant.  The warrant dictated that Walters’s blood was to be drawn by “a
physician, registered nurse, or qualified technician skilled in the taking of
blood from the human body.”  After Graves received the warrant, he collected a
blood kit and escorted Walters to the jail’s medical facility, where he
presented Walters and a copy of the warrant to Sharena Thompson, an LVN
employed by the City of Mansfield.  Graves then observed Thompson draw Walters’s
blood.

III. 
DISCUSSION

In
his sole point, Walters argues that because Thompson was “not qualified by her
professional title as an LVN, nor was an LVN authorized by the warrant issued
by the magistrate, the trial court erred in determining that the seizure [of
his blood] was reasonable under the 4th and 14th Amendments to the United
States Constitution, Article I, Section 9 of the Texas Constitution and Article
38.23 Texas Code of Criminal Procedure.”  U.S. Const. amends. IV, XIV; Tex.
Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).[3]
 Walters thus argues that the trial court erred by overruling his motion to
suppress his blood results.  We disagree.

A.      Standard
of Review

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  In reviewing the trial court’s decision, we do not engage in our own
factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990);
Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).
 The trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  Wiede v. State,
214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000), modified on other grounds by State v.
Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost
total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact
questions that turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108–09 (Tex. Crim.
App. 2006); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).
 But when application-of-law-to-fact questions do not turn on the credibility
and demeanor of the witnesses, we review the trial court’s rulings on those
questions de novo.  Amador, 221 S.W.3d at 673; Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at
652–53.

Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  When the record is silent on the reasons for the
trial court’s ruling, or when there are no explicit fact findings and neither
party timely requested findings and conclusions from the trial court, we imply
the necessary fact findings that would support the trial court’s ruling if the
evidence, viewed in the light most favorable to the trial court’s ruling,
supports those findings.  State v. Garcia-Cantu, 253 S.W.3d 236, 241
(Tex. Crim. App. 2008); see Wiede, 214 S.W.3d at 25.  We then review the
trial court’s legal ruling de novo unless the implied fact findings
supported by the record are also dispositive of the legal ruling.  Kelly,
204 S.W.3d at 819.

B.      Law
Regarding the Reasonableness of Blood Draws

A
blood draw constitutes a search and seizure under the Fourth Amendment.  Schmerber
v. California, 384 U.S. 757, 758–59, 86 S. Ct. 1826, 1829 (1966).  The
“Fourth Amendment’s proper function is to constrain, not against all intrusions
as such, but against intrusions which are not justified in the circumstances,
or which are made in an improper manner.”  Id. at 768, 86 S. Ct. at
1834.  The Supreme Court has set out a two-step test for determining the
reasonableness of a blood draw.  Id.  A blood draw is reasonable under
relevant Fourth Amendment standards if:

(1)   the police had
justification in requiring the suspect to submit to a blood test, and

 

(2)   the police employed
reasonable means and reasonable procedures in taking the suspect’s blood.

See State
v. Johnston, 336 S.W.3d 649, 658 (Tex. Crim. App. 2011),
cert. denied, 132 S. Ct. 212 (2011).  Walters does not challenge
whether police had justification for the stop, detention, arrest, or search
warrant.  Walters’s arguments fall within the second Schmerber step.

This
second step in the reasonableness analysis also has two distinct parts.  First,
in determining whether the police employed reasonable means to test a
defendant’s blood, a reviewing court must determine whether the police chose a
reasonable test. Second, in determining whether police employed a reasonable
procedure, a reviewing court must determine whether the police performed the
test in a reasonable manner.  Schmerber, 384 U.S. at 771, 86 S. Ct.
at 1836.  Walters does not challenge the first part of this step in the reasonableness
analysis either.  Walters’s challenge is to the second part—whether the blood
draw in this case was performed in a reasonable manner.

Police
officers act reasonably when drawing blood if they act in accordance with
accepted medical practices, including the equipment and technique that they
employ.  Johnston, 336 S.W.3d at 663.  To this end, the Supreme Court
has explained that tolerating searches that were conducted by unqualified
personnel or outside a medical environment may “invite an unjustified element
of personal risk of infection and pain.”  Schmerber, 384 U.S. at 771–72,
86 S. Ct. at 1836.  Searches justified by a valid warrant have a
presumption of legality unless the opponent produces evidence rebutting the
presumption of proper police conduct.  Amador, 221 S.W.3d at 672.  “[T]he
reasonableness of the manner in which a DWI suspect’s blood is drawn should be
assayed on an objective, case-by-case basis in light of the totality of the
circumstances surrounding the draw.”  Johnston, 336 S.W.3d at 661.

Walters
first argues that the police did not perform the blood draw in a reasonable
manner because they used an LVN to perform the draw when the warrant
specifically listed that a “physician, registered nurse, or qualified
technician” was to perform the draw—an LVN is not specifically listed.  Walters
argues that the magistrate in this case purposely excluded an LVN from those
persons who could perform the draw in this case.  To buttress this argument,
Walters points to section 724.017(a) of the Texas Transportation Code–-Texas’s
implied consent statute which governs the State’s ability to obtain a blood
sample from a DWI suspect when there is no warrant.  Tex. Transp. Code Ann. § 724.017(a)
(West 2011).  Under Section 724.017(a), “[o]nly a physician, qualified
technician, chemist, registered professional nurse, or licensed vocational
nurse may take a blood specimen at the request or order of a peace officer
under this chapter.”  Id.  Walters argues that section 724.017(a)
demonstrates that LVNs are a “separate category of authorized person[s]” who
can perform blood draws.  And Walters concludes that because this “separate
category of authorized person[s]” was not listed in the warrant, the use of an
LVN was unreasonable per se.

But
in blood-draw cases when the State has obtained a warrant, it is not fatal that
the State might draw blood “in a manner other than that directed by the
magistrate.”  See Coleman v. State, 833 S.W.2d 286, 290 (Tex. App.—Houston
[14th Dist.] 1992, pet. ref’d) (holding that blood
sample taken from defendant by phlebotomist was admissible even though search
warrant specified that sample be taken by a “medical doctor”).  Instead,
a reviewing court looks to the totality of the circumstances surrounding the
blood draw to determine whether it was performed in a reasonable manner.  Green
v. State, 799 S.W.2d 756, 757–58 (Tex. Crim. App. 1990).  “To do otherwise
would defeat the purpose behind the warrant requirement, and provide protection
for those to whom the issue on appeal is not one based upon the substantive
issue of probable cause but of technical default by the State.”  Id. 
And contrary to Walters’s position, section 724.017(a) supports that the State
performed the blood draw in this case in a reasonable manner.  As the court of
criminal appeals has stated, “compliance with Section 724.017 [provides] one
way to establish reasonableness under the Fourth Amendment.”  Johnston,
336 S.W.3d at 661.

Walters
next challenges the reasonableness of the blood draw by making the argument
that Thompson was not properly supervised nor qualified to perform a blood
draw.  Citing the Nursing Practices Act and the Administrative Code, Walters
argues that because venipuncture is not listed “within the scope of the LVN
practice” and because Thompson testified that her supervising physician never
watched her perform a blood draw, Thompson “simply did not demonstrate
qualifications to draw . . . blood.”[4]
 See 22 Tex. Admin. Code § 217.11(2) (2007) (Tex. Bd. of Nursing,
Standard of Nursing Practice); see also Tex. Occ. Code Ann. §§ 301.002(5),
301.353 (West 2012).

The
State counters that it has reviewed the statutes Walters cites and it “is
unable to locate any language in the [statutes he cites] that prohibits [LVNs]
from conducting blood draws.”  Like the State, we have read the statutes and
codes Walters cites and are also unable to locate language to support his
position.  We have, however, found support in warrantless blood-draw cases that
a physician is not required to be present when an LVN performs a blood draw.  See
Turner v. State, 734 S.W.2d 186, 187–88 (Tex. App.—Dallas 1987, pet. ref’d)
(holding that a physician need not be present when an LVN draws blood in
accordance with the direction or supervision of that physician).  In short, we
find nothing in this portion of Walters’s argument to support his contention
that Thompson lacked supervision or the qualifications to perform a blood draw.

Walters
also makes additional arguments attacking Thompson’s qualifications, but given
that the standard to determine whether the blood draw
in this case was performed in a “reasonable manner” is whether the blood was
drawn in accordance with accepted medical practices, we conclude that
the State acted reasonably when utilizing Thompson to draw Walters’s blood.  Johnston,
336 S.W.3d at 662–63.

At
the suppression hearing, Thompson testified about her training and background
in the medical field.  She is an LVN.  Prior to becoming an LVN, Thompson
worked as a certified nurse’s aide for five years and then worked as a medical
aide for another four years.  In order to be licensed as an LVN, Thompson
attended college for one year and obtained ninety credit hours.  After
graduation, Thompson earned her vocational nursing certificate.  After that,
Thompson took and passed the State boards which allowed her to get her license
and then become employed as an LVN.  As discussed above, Thompson’s status as an
LVN alone provides “one way to establish reasonableness under the Fourth
Amendment.”  See id. at 661; Aviles v. State, 385 S.W.3d
110, 116 (Tex. App.—San Antonio 2012, no pet.) (holding that no Fourth
Amendment violation occurred when a warrantless seizure of defendant’s blood
was conducted according to the prescriptions of the Transportation Code); see
also Tex. Transp. Code Ann. §§ 724.012, 724.017.

In
addition to being an LVN, the record also reflects that Thompson is
well-trained in conducting blood draws.  She participated in clinical hours
while in college, where she practiced blood draws “every day of the week” for
an entire week.  While there, Thompson received eight hours of teaching dedicated
to blood draws.  After demonstrating proficiency in the laboratory setting,
Thompson participated in clinicals in a hospital setting where she was allowed
to perform a clinical blood draw under the supervision of her instructor.  When
she began working at the Mansfield jail, Thompson received an additional three
days of blood-draw training under the supervision of a twenty-year LVN who had
performed thousands of blood draws.  Since her employment at the jail, Thompson
has performed approximately twenty-five blood draws over a one-year-and-five-month
period and conducts her work under the direction of a medical doctor.  And she
testified extensively to the medical protocols that she follows when performing
blood draws.  Furthermore, Officer Graves was present when Thompson drew
Walters’s blood, and he testified that he observed Thompson perform the blood
draw in accordance with the Mansfield Police Department’s protocol for drawing
blood.

Based
on the totality of the circumstances, the trial court could have concluded in
its discretion that Thompson drew Walters’s blood in accordance with accepted medical practices.  See Johnston,
336 S.W.3d at 662–63 (holding “Johnston’s blood was drawn in accordance with
acceptable medical practices and was therefore reasonable.”).  Thus, we cannot
say that the manner in which the blood draw was conducted was unreasonable. 
Accordingly, we hold that the requirements of the Fourth Amendment were met and
that the trial court did not err by overruling Walters’s objection on this
ground.  See Pacheco v. State, 347 S.W.3d 849, 854 (Tex. App.—Fort Worth
2011, no pet.) (holding that trial court did not err by overruling defendant’s
motion to suppress results of blood draw when “medical technologist” who drew
defendant’s blood testified that she followed both the hospital’s policy for
drawing blood and the directives of her certification on how to draw blood). 
We overrule Walters’s sole point.

IV.  Conclusion

Having
overruled Walters’s sole point on appeal, we affirm the trial court’s order.

 

BILL MEIER
JUSTICE

 

PANEL: 
MCCOY,
MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 21, 2013









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 49.04 (West Supp. 2012).





[3]We are only addressing
Walters’s Fourth Amendment claims.  When an appellant offers no reason for
construing the state constitution as conferring greater protection in an area
of law than the federal constitution, an appellate court will not address a
state constitutional argument; this specifically applies when an appellant
fails to point out any meaningful distinctions between the corresponding
clauses in the federal and state constitutions.  See Heitman v. State,
815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991) (discussing a reviewing court’s
duty to analyze “multifarious” arguments that cite both state and federal
constitutions but fail to provide sufficient distinction between state and
federal constitutional grounds).  Even though Walters asserts rights under both
state and federal grounds, he has not provided any argument or authority to
support any assertion that his claims be analyzed under both and construed
differently.





[4]Walters argument is
difficult to follow because in one part of his briefing he states that LVNs are
a “separate category of authorized person[s]” statutorily authorized to draw
blood, and yet in the majority of his briefing he contends that Thompson, an
LVN, is not qualified to draw blood.