

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00474-CR

| | | |
|---|---|---|
| Stephen Paul Walters | § | From County Criminal Court No. 9 |
| | § | of Tarrant County (1214539) |
| v. | § | March 21, 2013 |
| | § | Opinion by Justice Meier |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's order. It is ordered that the order of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Bill Meier



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00474-CR

STEPHEN PAUL WALTERS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

The State charged Appellant Stephen Paul Walters by information with the misdemeanor offense of driving while intoxicated.[2]  Prior to entering a plea of guilty, Walters moved to suppress the results of a blood draw taken at the Mansfield city jail by a licensed vocational nurse (LVN) on the night he was

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 49.04 (West Supp. 2012).

arrested. The trial court denied Walters's motion to suppress, accepted his plea of guilty, and assessed punishment at 120 days' confinement in jail and a fine of $850. The trial court suspended Walter's sentence and placed him on community supervision for eighteen months. In one point, Walters argues that the trial court erred by denying his motion to suppress. We will affirm.

## II. BACKGROUND

City of Mansfield Police Officer Justin Graves responded to a dispatch on July 30, 2010, regarding a vehicle failing to maintain a single lane. Graves stopped Walters, and after determining he was intoxicated, placed him under arrest and took him to the City of Mansfield jail for booking. Graves asked Walters if he would consent to a blood draw. Walters refused. Graves then completed a search warrant affidavit to conduct a blood draw, and a magistrate signed the warrant. The warrant dictated that Walters's blood was to be drawn by "a physician, registered nurse, or qualified technician skilled in the taking of blood from the human body." After Graves received the warrant, he collected a blood kit and escorted Walters to the jail's medical facility, where he presented Walters and a copy of the warrant to Sharena Thompson, an LVN employed by the City of Mansfield. Graves then observed Thompson draw Walters's blood.

## III. DISCUSSION

In his sole point, Walters argues that because Thompson was "not qualified by her professional title as an LVN, nor was an LVN authorized by the warrant issued by the magistrate, the trial court erred in determining that the

3

seizure [of his blood] was reasonable under the 4th and 14th Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution and Article 38.23 Texas Code of Criminal Procedure." U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).[3] Walters thus argues that the trial court erred by overruling his motion to suppress his blood results. We disagree.

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.

---

[3]We are only addressing Walters's Fourth Amendment claims. When an appellant offers no reason for construing the state constitution as conferring greater protection in an area of law than the federal constitution, an appellate court will not address a state constitutional argument; this specifically applies when an appellant fails to point out any meaningful distinctions between the corresponding clauses in the federal and state constitutions. *See Heitman v. State*, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991) (discussing a reviewing court's duty to analyze "multifarious" arguments that cite both state and federal constitutions but fail to provide sufficient distinction between state and federal constitutional grounds). Even though Walters asserts rights under both state and federal grounds, he has not provided any argument or authority to support any assertion that his claims be analyzed under both and construed differently.

4

Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the

5

implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

**B.    Law Regarding the Reasonableness of Blood Draws**

A blood draw constitutes a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 758–59, 86 S. Ct. 1826, 1829 (1966). The "Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768, 86 S. Ct. at 1834. The Supreme Court has set out a two-step test for determining the reasonableness of a blood draw. *Id.* A blood draw is reasonable under relevant Fourth Amendment standards if:

(1) the police had justification in requiring the suspect to submit to a blood test, and

(2) the police employed reasonable means and reasonable procedures in taking the suspect's blood.

*See State v. Johnston*, 336 S.W.3d 649, 658 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 212 (2011). Walters does not challenge whether police had justification for the stop, detention, arrest, or search warrant. Walters's arguments fall within the second *Schmerber* step.

This second step in the reasonableness analysis also has two distinct parts. First, in determining whether the police employed reasonable means to test a defendant's blood, a reviewing court must determine whether the police chose a reasonable test. Second, in determining whether police employed a

6

reasonable procedure, a reviewing court must determine whether the police performed the test in a reasonable manner. *Schmerber*, 384 U.S. at 771, 86 S. Ct. at 1836. Walters does not challenge the first part of this step in the reasonableness analysis either. Walters's challenge is to the second part—whether the blood draw in this case was performed in a reasonable manner.

Police officers act reasonably when drawing blood if they act in accordance with accepted medical practices, including the equipment and technique that they employ. *Johnston*, 336 S.W.3d at 663. To this end, the Supreme Court has explained that tolerating searches that were conducted by unqualified personnel or outside a medical environment may "invite an unjustified element of personal risk of infection and pain." *Schmerber*, 384 U.S. at 771–72, 86 S. Ct. at 1836. Searches justified by a valid warrant have a presumption of legality unless the opponent produces evidence rebutting the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672. "[T]he reasonableness of the manner in which a DWI suspect's blood is drawn should be assayed on an objective, case-by-case basis in light of the totality of the circumstances surrounding the draw." *Johnston*, 336 S.W.3d at 661.

Walters first argues that the police did not perform the blood draw in a reasonable manner because they used an LVN to perform the draw when the warrant specifically listed that a "physician, registered nurse, or qualified technician" was to perform the draw—an LVN is not specifically listed. Walters argues that the magistrate in this case purposely excluded an LVN from those

7

persons who could perform the draw in this case. To buttress this argument, Walters points to section 724.017(a) of the Texas Transportation Code–-Texas's implied consent statute which governs the State's ability to obtain a blood sample from a DWI suspect when there is no warrant. Tex. Transp. Code Ann. § 724.017(a) (West 2011). Under Section 724.017(a), "[o]nly a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter." *Id.* Walters argues that section 724.017(a) demonstrates that LVNs are a "separate category of authorized person[s]" who can perform blood draws. And Walters concludes that because this "separate category of authorized person[s]" was not listed in the warrant, the use of an LVN was unreasonable per se.

But in blood-draw cases when the State has obtained a warrant, it is not fatal that the State might draw blood "in a manner other than that directed by the magistrate." *See Coleman v. State*, 833 S.W.2d 286, 290 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (holding that blood sample taken from defendant by phlebotomist was admissible even though search warrant specified that sample be taken by a "medical doctor"). Instead, a reviewing court looks to the totality of the circumstances surrounding the blood draw to determine whether it was performed in a reasonable manner. *Green v. State*, 799 S.W.2d 756, 757–58 (Tex. Crim. App. 1990). "To do otherwise would defeat the purpose behind the warrant requirement, and provide protection for those to whom the issue on

8

appeal is not one based upon the substantive issue of probable cause but of technical default by the State." *Id.* And contrary to Walters's position, section 724.017(a) supports that the State performed the blood draw in this case in a reasonable manner. As the court of criminal appeals has stated, "compliance with Section 724.017 [provides] one way to establish reasonableness under the Fourth Amendment." *Johnston*, 336 S.W.3d at 661.

Walters next challenges the reasonableness of the blood draw by making the argument that Thompson was not properly supervised nor qualified to perform a blood draw. Citing the Nursing Practices Act and the Administrative Code, Walters argues that because venipuncture is not listed "within the scope of the LVN practice" and because Thompson testified that her supervising physician never watched her perform a blood draw, Thompson "simply did not demonstrate qualifications to draw . . . blood."[4] *See* 22 Tex. Admin. Code § 217.11(2) (2007) (Tex. Bd. of Nursing, Standard of Nursing Practice); *see also* Tex. Occ. Code Ann. §§ 301.002(5), 301.353 (West 2012).

The State counters that it has reviewed the statutes Walters cites and it "is unable to locate any language in the [statutes he cites] that prohibits [LVNs] from conducting blood draws." Like the State, we have read the statutes and codes Walters cites and are also unable to locate language to support his position. We

---

[4]Walters argument is difficult to follow because in one part of his briefing he states that LVNs are a "separate category of authorized person[s]" statutorily authorized to draw blood, and yet in the majority of his briefing he contends that Thompson, an LVN, is not qualified to draw blood.

have, however, found support in warrantless blood-draw cases that a physician is not required to be present when an LVN performs a blood draw. *See Turner v. State*, 734 S.W.2d 186, 187–88 (Tex. App.—Dallas 1987, pet. ref'd) (holding that a physician need not be present when an LVN draws blood in accordance with the direction or supervision of that physician). In short, we find nothing in this portion of Walters's argument to support his contention that Thompson lacked supervision or the qualifications to perform a blood draw.

Walters also makes additional arguments attacking Thompson's qualifications, but given that the standard to determine whether the blood draw in this case was performed in a "reasonable manner" is whether the blood was drawn in accordance with accepted medical practices, we conclude that the State acted reasonably when utilizing Thompson to draw Walters's blood. *Johnston*, 336 S.W.3d at 662–63.

At the suppression hearing, Thompson testified about her training and background in the medical field. She is an LVN. Prior to becoming an LVN, Thompson worked as a certified nurse's aide for five years and then worked as a medical aide for another four years. In order to be licensed as an LVN, Thompson attended college for one year and obtained ninety credit hours. After graduation, Thompson earned her vocational nursing certificate. After that, Thompson took and passed the State boards which allowed her to get her license and then become employed as an LVN. As discussed above, Thompson's status as an LVN alone provides "one way to establish

10

reasonableness under the Fourth Amendment." *See id.* at 661; *Aviles v. State*, 385 S.W.3d 110, 116 (Tex. App.—San Antonio 2012, no pet.) (holding that no Fourth Amendment violation occurred when a warrantless seizure of defendant's blood was conducted according to the prescriptions of the Transportation Code); *see also* Tex. Transp. Code Ann. §§ 724.012, 724.017.

In addition to being an LVN, the record also reflects that Thompson is well-trained in conducting blood draws. She participated in clinical hours while in college, where she practiced blood draws "every day of the week" for an entire week. While there, Thompson received eight hours of teaching dedicated to blood draws. After demonstrating proficiency in the laboratory setting, Thompson participated in clinicals in a hospital setting where she was allowed to perform a clinical blood draw under the supervision of her instructor. When she began working at the Mansfield jail, Thompson received an additional three days of blood-draw training under the supervision of a twenty-year LVN who had performed thousands of blood draws. Since her employment at the jail, Thompson has performed approximately twenty-five blood draws over a one-year-and-five-month period and conducts her work under the direction of a medical doctor. And she testified extensively to the medical protocols that she follows when performing blood draws. Furthermore, Officer Graves was present when Thompson drew Walters's blood, and he testified that he observed Thompson perform the blood draw in accordance with the Mansfield Police Department's protocol for drawing blood.

11

Based on the totality of the circumstances, the trial court could have concluded in its discretion that Thompson drew Walters's blood in accordance with accepted medical practices. *See Johnston*, 336 S.W.3d at 662–63 (holding "Johnston's blood was drawn in accordance with acceptable medical practices and was therefore reasonable."). Thus, we cannot say that the manner in which the blood draw was conducted was unreasonable. Accordingly, we hold that the requirements of the Fourth Amendment were met and that the trial court did not err by overruling Walters's objection on this ground. *See Pacheco v. State*, 347 S.W.3d 849, 854 (Tex. App.—Fort Worth 2011, no pet.) (holding that trial court did not err by overruling defendant's motion to suppress results of blood draw when "medical technologist" who drew defendant's blood testified that she followed both the hospital's policy for drawing blood and the directives of her certification on how to draw blood). We overrule Walters's sole point.

## IV. CONCLUSION

Having overruled Walters's sole point on appeal, we affirm the trial court's order.

BILL MEIER
JUSTICE

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 21, 2013

12