

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00355-CR

ERNEST HENRY PACHECO                                          APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

## OPINION

----------

### I. INTRODUCTION

Appellant Ernest Henry Pacheco appeals the trial court's denial of his motion to suppress evidence. After the motion was denied, Pacheco pleaded guilty to driving while intoxicated, enhanced by two prior convictions for driving while intoxicated and enhanced by the use of a deadly weapon. *See* Tex. Penal Code Ann. §§ 49.04, 49.09 (West 2011). The trial court sentenced Pacheco to thirty-five years' confinement. In his sole point, Pacheco argues that the trial

court erred by denying his motion to suppress because the procedure that police employed to draw his blood was unreasonable. We will affirm.

## II. BACKGROUND FACTS

Around 1:50 a.m. on November 12, 2008, the Parker County Sheriff's Office notified Officer Clark of the Hudson Oaks Police Department that a person had called 911 complaining about a possible intoxicated driver traveling westbound on Interstate 20, nearing Hudson Oaks. The caller described a green, Chevrolet pickup driving between thirty and ninety miles per hour, weaving, and driving on the shoulder. When the caller reported that the truck was approaching the nearest exit to Officer Clark, Officer Clark spotted a vehicle matching the description and followed it. He observed the driver, Pacheco, weaving, driving slowly, and swerving to avoid collisions with other cars. Officer Clark activated his overhead lights and eventually his siren, and Pacheco pulled over to the side of the road.

Officer Clark testified that when he approached the truck, he smelled a strong odor of alcohol emanating from Pacheco and his vehicle. He also testified that Pacheco had bloodshot and glassy eyes, slow reactions, poor and unsteady balance, and slurred speech. Pacheco admitted to Officer Clark that he had been drinking. Officer Clark administered the horizontal gaze nystagmus test and testified that the test yielded six clues of intoxication. Officer Clark arrested Pacheco for driving while intoxicated, took him to the Hudson Oaks Police Department, and read him his *Miranda* rights. The dispatcher notified Officer

2

Clark that Pacheco had been convicted of driving while intoxicated on two prior occasions. Pacheco declined to give a breath specimen.

Officer Clark sought and obtained a search warrant for Pacheco's blood, and he transported him to Weatherford Regional Hospital. Christy Smith, a medical technologist certified by the American Society for Clinical Pathology, drew a sample of Pacheco's blood for testing. Smith testified that she has more than thirty years of experience as a medical technologist and that she has taken thousands of blood samples in that capacity. Smith wrote a reminder on a sticky note after drawing Pacheco's blood that said, "Pacheco, Ernest. 11/12/08. Hispanic male, short," and "looked like Val," one of Smith's coworkers. Smith testified that she drew blood only from Pacheco that day and that she followed the same procedure drawing his blood as she followed when drawing samples from all patients. According to Smith, the procedure follows Weatherford Regional Hospital's policies and protocols, and it does not require the technologist to ask for a patient's medical history before drawing blood.

At a pretrial hearing, Pacheco moved to suppress all evidence against him. The relevant challenges were Smith's qualifications, the safety of the environment in which Smith drew Pacheco's blood, and the insufficiency of the paperwork documenting the blood draw. After hearing testimony from the arresting officer and the medical technologist, the trial court denied Pacheco's motion, reasoning that Smith was qualified and that she had drawn Pacheco's blood according to hospital procedure.

### III. MOTION TO SUPPRESS

In arguing that the police's search and seizure of his blood was unreasonable, Pacheco relies on this court's decision in *State v. Johnston*, 305 S.W.3d 746 (Tex. App.—Fort Worth 2009) *rev'd*, 336 S.W.3d 649 (Tex. Crim. App. 2011). There, we affirmed the trial court's decision to grant Johnston's motion to suppress. *Id.* at 759–60. Pacheco argues that "[i]n order for this Court to affirm the trial court's judgment herein it would have to overrule itself." But after the parties filed their briefs in this appeal, the Texas Court of Criminal Appeals reversed our decision in *Johnston*. *See Johnston*, 336 S.W.3d at 664. Therefore, we will apply the test for determining the reasonableness of a blood draw under the Fourth Amendment as the court of criminal appeals explained in *Johnston*. *Id.* at 658–59.

#### A.    Standard of Review

When reviewing a trial judge's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the trial judge's ruling. *Id.* at 657; *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). We afford almost total deference to a trial judge's determination of historical facts that the record supports. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). This same highly deferential standard applies regardless of whether the trial judge has granted or denied a motion to suppress evidence. *Garcia-Cantu*, 253 S.W.3d at 241. Thus, the party that prevailed in the trial court is afforded the strongest

4

legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Id.* We also afford almost total deference to a trial judge's ruling on mixed questions of law and fact when resolution of those questions depends upon evaluations of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. But the question of whether police executed the search warrant using reasonable means and procedure is subject to *de novo* review because the application of legal principles to a specific set of facts is a question of law. *See Garcia-Cantu*, 253 S.W.3d at 241.

## B. Fourth Amendment Reasonableness of Drawing Blood

A blood draw constitutes a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 758–59, 86 S. Ct. 1826, 1829 (1966). The "Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768, 86 S. Ct. at 1834. The Supreme Court has set out a two-step test for determining the reasonableness of a blood draw. *Id.* A blood draw is reasonable under relevant Fourth Amendment standards if:

(1) the police had justification in requiring the suspect to submit to a blood test, and

(2) the police employed reasonable means and reasonable procedures in taking the suspect's blood.

*See Johnston*, 336 S.W.3d at 658. Pacheco does not challenge whether police had justification for the stop, detention, arrest, or search warrant. Therefore, we

5

only address the second step and determine whether the police employed reasonable means and reasonable procedure in taking Pacheco's blood.

Pacheco challenges "the method and procedure used" in executing the search warrant. The State argues that "the record supports the trial court's factual findings that the manner in which the search warrant for [the blood] sample was executed was reasonable under the Fourth Amendment."

The second step in the reasonableness analysis has two distinct parts. First, in determining whether the police employed reasonable means to test Pacheco's blood, we must determine whether Clark chose a reasonable test. Second, in determining whether police employed a reasonable procedure, we must determine whether Clark and Smith performed the test in a reasonable manner. *Schmerber*, 384 U.S. at 771, 86 S. Ct. at 1836.

### 1. Reasonableness of the Chosen Test

Pacheco argues that Clark and Smith failed to obtain Pacheco's "general medical history" and that "no follow up was done." Pacheco contends that this failure subjected him to "an unreasonable risk of medical harm that made the blood draw unreasonable under the 4th Amendment of the United States Constitution." The State argues that the "highly trained, educated, experienced, and certified medical technologist who drew [Pacheco's] blood in a hospital testified that she does not conduct either procedure as part of her normal blood draw routine, but she did follow hospital policy and procedure . . . . Therefore, neither was medically necessary in this case."

6

For the general population, the Supreme Court has determined that a blood test is a reasonable means in which to analyze an individual's blood alcohol level. *Id.*; *see also Breithaupt v. Abram*, 352 U.S. 432, 435–36, 77 S. Ct. 408, 410 (1957) (explaining that those entering the military, marrying, or going to college must take blood tests and millions voluntarily donate blood so the "blood test procedure has become routine in our everyday life"); *Johnston*, 336 S.W.3d at 659. Courts may deem blood testing to be unreasonable over another method of testing when "the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing." *Schmerber*, 384 U.S. at 771, 86 S. Ct. at 1836. But failing to inquire into an individual's medical history before drawing blood and failing to conduct a follow-up examination do "not render blood draws per se unreasonable." *Johnston*, 336 S.W.3d at 659. Therefore, the suspect has the burden to show that the type of test employed was "not a reasonable means to obtain a blood alcohol level assessment as to him or her individually." *Id.* at 660. The record must contain evidence showing that the police chose a test that was not reasonable due to a "verifiable medical condition," or we will presume that the choice to administer the test is reasonable. *Id.*

Here, the record contains no evidence that Pacheco suffers from a medical condition that would have made another means of testing preferable. *See id.* And Pacheco is not one of "the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing," as Pacheco had

7

already refused to give a breath specimen. *See Schmerber*, 384 U.S. at 771, 86 S. Ct. at 1836. Because Smith's failure to ask Pacheco about his medical history and conduct a follow-up examination did not render the draw unreasonable, we conclude that the police chose a reasonable means to obtain a blood alcohol assessment as to Pacheco, individually.

### 2. Reasonableness of the Manner of Performance

Pacheco argues that Clark and Smith did not perform the procedure in a reasonable manner because the paperwork documenting the blood draw was incomplete. He contends that the "lack of identifiers places a patient at risk"; that medical procedures concerning the identity of the patient are "critical to preventing, diagnosing[,] and treating a person and can prevent unreasonable risks of medical harm"; and that it "creates unreasonable risks of medical harm." The State argues that Pacheco failed to demonstrate how some clerical errors in the accompanying paperwork rendered the blood draw constitutionally unreasonable.

Police officers act reasonably when drawing blood if they act in accordance with accepted medical practices, including the equipment and technique that they employ. *Johnston*, 336 S.W.3d at 663. The Supreme Court has explained that tolerating searches that were conducted by unqualified personnel or outside a medical environment may "invite an unjustified element of personal risk of infection and pain." *Schmerber*, 384 U.S. at 772, 86 S. Ct. at 1836. Searches justified by a valid warrant have a presumption of legality unless

8

the opponent produces evidence rebutting the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). "[T]he reasonableness of the manner in which a DWI suspect's blood is drawn should be assayed on an objective, case-by-case basis in light of the totality of the circumstances surrounding the draw." *Johnston*, 336 S.W.3d at 661.

Pacheco's argument that identifiers can prevent unreasonable risks of harm is misplaced because the standard is whether the blood was drawn in accordance with accepted medical practices, and Smith testified that she followed both the hospital's policy for drawing blood and the directives of her certification on how to draw blood. Pacheco argues that the lack of "identifiers" put him at "risk of medical harm," but he fails to explain how he was at risk. Without more, Pacheco has failed to satisfy his burden to rebut the presumption of reasonableness. The record contains evidence supporting the trial court's conclusion that "the manner in which [Pacheco's] blood was drawn was reasonable."

Under the totality of the circumstances, we hold that the equipment and technique Smith employed to draw Pacheco's blood followed medically accepted practices and was therefore reasonable. *See Johnston*, 336 S.W.3d at 662–63 (holding "Johnston's blood was drawn in accordance with acceptable medical practices and was therefore reasonable."). The circumstances here did not "invite an unjustified element of personal risk of infection or pain." *See Schmerber*, 384 U.S. at 771, 86 S. Ct. at 1836.

## IV. CONCLUSION

Because the police were justified in requiring Pacheco to submit to a blood test and because Smith and Clark employed reasonable means and reasonable procedures in drawing Pacheco's blood, we conclude that the record shows no violation of Pacheco's right under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures.  Thus, we overrule Pacheco's sole point and affirm the trial court's order denying his motion to suppress.

BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER, J.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

PUBLISH

DELIVERED:  July 28, 2011

10