

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00417-CR

_____

PHILIP JAFAROSMAN KURY, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 10
Tarrant County, Texas
Trial Court No. 1593602

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

Appellant, Philip Jafarosman Kury, was charged with the misdemeanor offense of driving while intoxicated (DWI), enhanced by a prior DWI conviction. Kury pled not guilty, and the case proceeded to a jury trial. The jury found Kury guilty of DWI. Kury pled true to the enhancement paragraph. The trial court assessed Kury's punishment at 225 days in the Tarrant County Jail and entered its judgment accordingly.

In two points, Kury challenges the sufficiency of the evidence supporting his conviction and the reasonableness of the blood draw. Because we hold the evidence is sufficient and the circumstances of the blood draw were reasonable, we affirm the trial court's judgment.

## I.     Background

Kury was initially detained because his car matched the description of a vehicle associated with a fight at a nearby apartment complex. Once the officers cleared him of the assault, they investigated him for DWI. Kury had bloodshot, watery eyes and a strong odor of an alcoholic beverage coming from his mouth. He admitted that he had consumed three beers and that he had been driving. Kury also slurred his words and his answers to the officers' questions seemed a "little off."

Kury refused to perform the standardized field sobriety tests and was very uncooperative throughout the investigation; he acted erratically and refused to respond to verbal commands. Kury was arrested and taken to Medical City Arlington,

where his blood was drawn pursuant to a warrant. Kury continued to be uncooperative during the blood draw by refusing to listen to officer commands, kicking hospital equipment, and escaping multiple times from leg restraints. Kury's blood alcohol concentration was 0.209.

## II.    Sufficient Evidence

Kury's first point attacks the sufficiency of the evidence in two subparts: evidence that he was "operating" the vehicle and evidence that he was intoxicated. Because the evidence was sufficient to support both elements, we overrule his first point.

## A.    Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. The *Jackson* standard of review, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (*overruling Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)). "[W]e review the sufficiency of the evidence establishing the elements of a criminal offense under the single sufficiency standard set out in *Jackson v. Virginia*." *Acosta v. State*, 429 S.W.3d 621, 624 (Tex. Crim. App. 2014).

3

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

## B.     Evidence of Operation

Kury argues that the State failed to prove he was operating a vehicle. Specifically, he argues police at the scene never saw him take any action that would "enable" the use of the vehicle. We disagree with his arguments.

To establish that Kury committed the offense of DWI, the State was required to prove that he was "intoxicated while operating a motor vehicle in a public place." *See* Tex. Penal Code Ann. § 49.04(a). For the evidence to be sufficient to support a conviction for DWI, a "temporal link" must exist between the defendant's intoxication and his driving. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). This temporal link may be established by circumstantial evidence. *Id.* (noting that circumstantial evidence is as probative as direct evidence in establishing guilt).

The Penal Code does not define "operate" or "operating." However, in the context of a DWI, the Court of Criminal Appeals has defined "operate" as taking "action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). And other courts have also interpreted "operating" a motor vehicle "very broadly." *Priego v. State*, 457 S.W.3d 565, 569 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Smith v.*

4

*State*, 401 S.W.3d 915, 919 (Tex. App.—Texarkana 2013, pet. ref'd)). "[W]hile driving does involve operation, operation does not necessarily involve driving." *Denton*, 911 S.W.2d at 389; *Priego*, 457 S.W.3d at 569 (stating that "any action that is more than mere preparation toward operating the vehicle" falls under definition of "operating" and that "[t]he action taken to affect the functioning of the vehicle 'need not succeed in causing the vehicle to function for the person to be operating it'" (quoting *Smith*, 401 S.W.3d at 919, and *Strong v. State*, 87 S.W.3d 206, 215 (Tex. App.—Dallas 2002, pet. ref'd), *abrogated on other grounds by Pfeiffer v. State*, 363 S.W.3d 594 (Tex. Crim. App. 2012))). Courts have therefore upheld DWI convictions in situations in which the defendant was not actually driving the vehicle. *Priego*, 457 S.W.3d at 569. We must consider the totality of the circumstances in determining whether sufficient evidence supports a conclusion that the defendant operated the vehicle. *See Harrell v. State*, No. PD-0985-19, 2021 WL 1556073, at *2 (Tex. Crim. App. Apr. 21, 2021) (holding evidence was sufficient to support jury's conclusion that defendant operated vehicle when defendant was found in driver's seat of minivan with seatbelt buckled and defendant confessed that he had been driving same minivan identified by 911 caller as driving erratically); *Dansby v. State*, 530 S.W.3d 213, 228 (Tex. App.—Tyler 2017, pet. ref'd) (concluding that evidence was sufficient to support conviction when officer found unoccupied truck running in restaurant parking lot and defendant, who was inside restaurant, admitted he had driven vehicle to restaurant).

Here, a reasonable jury could conclude that Kury had been operating the vehicle in a public place due to Officer Willis's testimony that (1) he saw Kury exit the vehicle from the vehicle's driver's seat, (2) moments before he came upon the vehicle that Kury exited, he saw the vehicle driving down Green Oaks Blvd., (3) the vehicle was running and sitting in a lane of traffic, (4) Kury told Willis that he had stopped his vehicle because he was having trouble with the vehicle's brakes, and (5) Kury admitted that he was the driver of the vehicle. Based on the totality of the circumstances, we find the evidence sufficient to demonstrate that Kury "took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton*, 911 S.W.2d at 390. We therefore overrule this portion of his first point.

## C. Evidence of Intoxication

Kury also claims that "[e]ven if there had been sufficient evidence of operation, the State was unable to show that [Kury] was actually intoxicated during that operation." We disagree.

Intoxication may be proven in either of two ways: (1) loss of normal use of mental or physical faculties or (2) alcohol concentration in the blood, breath, or urine of 0.08 or more. Tex. Penal Code Ann. § 49.01(2). The first definition is the "impairment" theory, while the second is the "per se" theory. *See State v. Mechler*, 153 S.W.3d 435, 437 (Tex. Crim. App. 2005). They are not mutually exclusive, and both theories are submitted in the jury charge as long as there is evidence that would

6

support both definitions. *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010). Here, the trial court submitted both theories of intoxication to the jury.[1]

A medical worker drew Kury's blood several hours after he was detained. The blood test showed that Kury's blood alcohol concentration level was 0.209 at the time his blood was drawn. As Kury points out, the State did not present retrograde-extrapolation evidence demonstrating that Kury's blood alcohol level was 0.08 or higher at the time he was driving. However, the Court of Criminal Appeals has stated that blood alcohol tests, even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication, particularly when considered in conjunction with additional signs of intoxication. *Id.* (considering test results and additional evidence of erratic driving, stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, and any admissions by the defendant concerning what, when, and how much he had been drinking as supporting an inference that a defendant was intoxicated at the time of driving); *see also Mechler*, 153 S.W.3d at 441.

Here, in addition to the blood test result, the State presented other evidence that logically raised an inference that Kury was intoxicated while he was driving. Two police officers testified to Kury's demeanor while they spoke to him. One observed that Kury had bloodshot, watery eyes and emitted a strong odor of alcohol. The

---

[1]At trial, Kury did not object to the trial court's submission of both theories of intoxication to the jury.

other officer described Kury as slurring his words, uncooperative, erratic, and refusing to respond to verbal commands. Moreover, Kury does not dispute his admission to the officers that he had been drinking beer. One officer opined that if Kury had been allowed to drive, "he would have presented a danger to himself and others"; the other testified that he believed Kury was intoxicated based solely on his observations of Kury's behavior that night. Such evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that Kury was intoxicated at the time he was operating his vehicle. Accordingly, we find the evidence sufficient to support the jury's finding that Kury was intoxicated at the time he operated his vehicle. We overrule the remainder of Kury's first point of error.

### III.    Reasonableness of the Blood Draw

In his second point, Kury argues that the trial court erred in overruling his motion to suppress the blood test evidence because the State failed to show that the procedures used to take his blood were reasonable under the Fourth Amendment. We disagree.

### A.    Facts Concerning the Blood Draw

The record reflects that the blood draw occurred at Medical City Arlington. Laura Wiggs, the day shift supervisor at the hospital, drew Kury's blood. Wiggs did not testify at trial.

During his testimony, Officer Willis testified about a form—the "Blood Withdrawal Procedure" form—that he utilizes during blood draws. The form

8

contains the steps, with confirmation boxes, that should be followed when conducting a blood draw. The form was signed by Laura Wiggs in the spot designated "Nurse/Medical Technician" and also by Officer Willis. Officer Willis admitted that a few of the boxes on the Blood Withdrawal Procedure form had not been checked as completed; however, the officer testified that every step on the form had been followed and completed. Willis explained that due to Kury's disruptive and "combative nature" during the blood draw, he was unable to check off each box as the steps were completed. Willis stated that he would not have signed the form if all of the steps had not been completed.

In response to defense counsel's questions regarding why it is important to have sanitary conditions when conducting a blood draw, Officer Willis stated that he took Kury to the hospital in order to comply with such requirements. However, Officer Willis admitted that he was not aware of when the examination room had last been cleaned or sanitized. Officer Willis also acknowledged that Wiggs placed the blood kit on a stool in the room and was not aware when that specific stool had been previously sanitized. Officer Willis was, however, aware that Wiggs cleaned the site where the blood was drawn with betadine solution.

Kury also presented evidence that Wiggs picked up something from the floor (Kury characterized it as trash; however, an officer believed it was medical supplies that Kury had kicked over) and used her phone to call a translator to speak to Kury—while she had gloves on—before she performed the blood draw.

9

The trial court held a suppression hearing regarding the reasonableness of the blood draw; however, it did not make a ruling at the end of the hearing. The trial court allowed the parties to present further evidence to the jury before making a ruling. Ultimately, the trial court denied Kury's motion to suppress the blood taken from the draw and the results of such draw.

**B.     Standard of Review**

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

**C.     The Law Concerning the Reasonableness of Blood Draws**

A blood draw constitutes a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834 (1966); *Pacheco v. State*, 347 S.W.3d 849, 853 (Tex. App.—Fort Worth 2011, no pet.). Whether a blood draw is conducted pursuant to a warrant or not, the assessment of reasonableness is purely a matter of Fourth Amendment law. *State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011) (applying *Schmerber*).

A two-part test exists to determine whether a blood draw is reasonable: (1) did the police have justification to require the suspect to submit to a blood test, and (2) did the police employ reasonable means and reasonable procedures in taking the suspect's blood? *Id.* at 658. Kury challenges only the second prong. When reviewing the reasonableness of a blood draw, courts consider the evidence on a case-by-case basis in light of the totality of the circumstances surrounding the blood draw. *Id.* at 661.

The focus of a Fourth Amendment reasonableness analysis regarding the manner in which blood was drawn is on the effect of the bodily intrusion on the defendant's safety, health, dignitary interests, and personal privacy. *Siddiq v. State*, 502 S.W.3d 387, 403 (Tex. App.—Fort Worth 2016, no pet.).[2] Such an analysis can include the consideration of any departures from standard technique or the standard of care. *Id.*

The Court of Criminal Appeals has previously held that venipuncture blood draws are presumed reasonable as a means for measuring a suspect's blood alcohol content. *See Johnston*, 336 S.W.3d at 660. Accordingly, Kury has the burden to rebut

---

[2]In *Siddiq*, a medical assistant deviated from accepted medical standards when extracting the defendant's blood. *Siddiq*, 502 S.W.3d at 398–99, 403. The medical assistant reused equipment, positioned the defendant's arm incorrectly, and performed parts of the blood draw incorrectly. *Id.* at 399–400. Despite these errors, this court held that the blood draw was performed reasonably under the Fourth Amendment because there was no evidence that the manner in which the blood draw was performed threatened the defendant's safety or health, caused the defendant trauma or pain, endangered the defendant's life or health, or created a level of intrusiveness greater than a typical blood draw. *Id.* at 403.

the presumption by presenting evidence that makes his blood draw unreasonable. *See id.*

## D. The Blood Draw was Performed in a Reasonable Manner

Kury asserts that "[t]he circumstances of the blood draw were too filthy to constitute a 'reasonable' search under the Fourth Amendment," but this argument is not supported by the evidence. Kury initially points to the fact that Wiggs did not testify at trial and therefore the State failed to show that Wiggs was actually qualified as a technician or a nurse to take blood. Kury's argument seems to focus on the requirements of Chapter 724 of the Texas Transportation Code, which provides that only a physician, qualified technician, registered professional nurse, licensed vocational nurse, or a licensed or certified emergency medical technician can take a blood specimen. Tex. Transp. Code Ann. § 724.017(a). But Chapter 724 is not controlling authority when it comes to determining the reasonableness of how a blood draw was performed under the Fourth Amendment. *Johnston*, 336 S.W.3d at 661 (holding that Chapter 724 is inapplicable when there is a warrant to draw blood). Accordingly, compliance with Chapter 724 is not necessary to satisfy the Fourth Amendment. *Id.*; *Beeman v. State*, 86 S.W.3d 613, 615, 616 (Tex. Crim. App. 2002) (holding that compliance with Section 724.017 provides one way to establish reasonableness under the Fourth Amendment., but Section 724.017 in no way provides the exclusive means for establishing reasonableness). Moreover, the evidence supports an inference that Wiggs was qualified to take Kury's blood

12

specimen—Wiggs signed the Blood Withdrawal Procedure form in the spot designated "Nurse/Medical Technician," and Wiggs worked as the "day shift supervisor" at the hospital where the blood was drawn. In fact, Kury even referred to Wiggs as a "nurse" during trial.

Next, Kury argues that the "physical circumstances of the blood draw itself" violated the Fourth Amendment's requirement of reasonableness. Specifically, Kury complains that the blood draw was not conducted in a sanitary environment. Kury points to the fact that after Wiggs washed her hands and put on gloves, she picked up "trash" on the floor and touched her cell phone before taking his blood. He also states that there was no evidence that the hospital room where his blood was taken had been cleaned prior to the blood draw. However, there was no evidence that Wiggs's touching of items with her gloved hand threatened Kury's health or safety, or exposed him to an unreasonable risk of pain or infection. In fact, Kury does not argue that Wiggs's action in touching items with her gloved hands before conducting the blood draw impacted him in any negative way. And as to his claim regarding the cleanliness of the hospital room, Kury provided no evidence that the room was unsanitary. Moreover, one police officer that assisted at Kury's blood draw testified that Medical City Arlington was generally a place that he would deem sanitary and that there was nothing unsanitary about the blood draw in this case. Another police officer present during Kury's blood draw also testified that he believed the hospital room that Kury was placed in for purposes of the blood draw was clean.

There is simply no evidence that the manner in which the blood draw was performed on Kury—including Wiggs's action in picking up items from the floor of the hospital room—threatened Kury's safety or health, caused Kury trauma or pain, endangered Kury's life or health, or created a level of intrusiveness greater than a typical blood draw. *See Siddiq*, 502 S.W.3d at 403. We therefore hold that the trial court did not err by determining under the totality of the circumstances that the blood draw on Kury was performed in a reasonable manner as required by the Fourth Amendment. *See Schmerber*, 384 U.S. at 758–59, 86 S. Ct. at 1829; *Johnston*, 336 S.W.3d at 659–64; *Siddiq*, 502 S.W.3d at 403. We overrule Kury's second point.

## IV.   CONCLUSION

Having overruled Kury's points on appeal, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 6, 2021

14